## HAY et al. v. SHELL PETROLEUM CORPORATION et al.
### No. 1961.

District Court, W. D. Oklahoma.
Nov. 7, 1939.

Cress, Tebbe & Cress, of Perry, Okl., for plaintiffs.

Geo. W. Cunningham, of Tulsa, Okl., for defendant Shell Petroleum Corporation.

Victor C. Mieher, of Tulsa, Okl., for defendant Amerada Petroleum Corporation.

A. G. Cochran, of Tulsa, Okl., for defendant Ohio Oil Co.

VAUGHT, District Judge.

This action was originally instituted by Elizabeth L. Hay and Reinhold G. Hay as plaintiffs. After the trial of this cause, however, the death of Elizabeth L. Hay and the appointment of L. E. Plumer as

administrator were suggested to this court by motion, and by proper order, L. E. Plumer as administrator of the estate of Elizabeth L. Hay has been substituted in this action for Elizabeth L. Hay.

The plaintiffs, as residents and citizens of Noble County, State of Oklahoma, brought this action against the Shell Petroleum Corporation (formerly Roxana Petroleum Corporation), Stanolind Oil & Gas Company, a corporation, Amerada Petroleum Corporation, and Ohio Oil Company, a corporation, as defendants, alleging that Elizabeth L. Hay, one of the plaintiffs herein, was the owner of the southwest quarter (SW¼) of section twenty-one, township twenty north, range two west, I. M., Noble County, Oklahoma, and that on the 26th of July, 1927 the plaintiff, Elizabeth L. Hay, joined by her husband Reinhold G. Hay, executed and delivered to the Roxana Petroleum Corporation an oil and gas lease on the above described quarter section, said lease to run for a period of five years from the 10th of November, 1928 and as long thereafter as oil and gas or either of them are produced from said land by the said lessee.

The said lessee agreed in said lease contract to pay the usual one-eighth of the gross proceeds of the oil and gas produced from said lease.

Thereafter and on the 21st of September, 1932, the plaintiffs herein executed a mineral deed to one W. O. Allen to an undivided one-fourth interest in and to all of the oil, gas and other minerals in and under said described real estate, reserving any rights which existed in favor of the plaintiffs at the time of the execution of said mineral deed.

Thereafter and on the 21st of September, 1932 the said W. O. Allen conveyed the mineral deed to the undivided one-fourth interest in the above described real estate to the Stanolind Oil & Gas Company of Tulsa, Oklahoma, and the said Stanolind Oil & Gas Company conveyed an undivided one-eighth interest in and to the oil, gas and other minerals under said real estate to the Amerada Petroleum Corporation.

Thereafter, on the 3rd of October, 1932, the said Elizabeth L. Hay and Reinhold G. Hay conveyed a one-sixteenth interest in and to all of the oil, gas and other minerals in and under said real estate to Horton Grisso and William E. Grisso, Jr., and thereafter, the said Horton Grisso and William E. Grisso, Jr., conveyed a one-

sixteenth interest in the oil, gas and other minerals in and under the said real estate to C. A. Baltsell, Tulsa, Oklahoma. The interest was conveyed by Baltzell to the Amerada Petroleum Corporation on the 10th of October, 1933.

Thereafter, on the 9th of September, 1933, the said Elizabeth L. Hay and Reinhold G. Hay conveyed by mineral deed a three-sixteenths interest in and to all of the oil, gas and other minerals under said real estate to the Mid-Kansas Oil & Gas Company.

The Mid-Kansas Oil & Gas Company changed its name on the 8th of August, 1934 to Marathon Oil Company, a corporation, and, on September 10, 1936, conveyed all of its right, title and interest in and to the above described real estate with other property to the Ohio Oil Company, a corporation.

It is stipulated that at the time of the filing of this action, the plaintiffs owned an undivided one-half interest in the royalty under the lease in question. The other one-half interest being owned as follows: by the defendant Stanolind Oil & Gas Company, an undivided one-eighth interest; by the defendant Amerada, an undivided three-sixteenths interest; and, by the defendant Ohio Oil Company, an undivided three-sixteenths interest.

The plaintiffs further allege that said lease contained the implied covenant that the work of development and production would be continued with reasonable diligence along such lines as to be reasonably calculated to make the extraction of oil and gas from the leased land of mutual advantage and profit to both parties to said lease and that said lease furthermore contained an implied covenant that, if during the term of the lease, oil or gas or both were found on adjacent tracts of land within such a distance as to drain the oil or gas or both from the premises of these plaintiffs, then the lessee would drill wells on the said leasehold estate in order to protect the said leasehold estate from drainage, within a reasonable time after the discovery of said oil or gas upon the said adjacent premises.

On or about the 1st day of November, 1933 the defendant Shell Petroleum Corporation made a location on the southwest quarter of the lands herein above described as leased by the plaintiffs, approximately in the center of the said forty acres, began drilling thereon, and finished the drilling

of the same as a completed well on the 29th of January, 1934, which well, drilled to the depth of 5,183 feet and known as Hay No. 1, produced 580 barrels of 42.6 gravity oil the first twelve hours. .

The Minnehoma Oil & Gas Company made a location in the center of the southeast quarter of the northeast quarter of section twenty in said township and range, began drilling thereon on the 8th of January, 1934, and finished drilling as a completed well on the 26th day of March, 1934, which well produced during the first twelve hours 416 barrels of oil, was drilled to the depth of 5,208 feet and is designated as Minnehoma No. 2, being one location north and one location west of the northwest forty acres of the quarter section involved in this lease.

The defendants, Stanolind, Amerada and Ohio Oil Company, being the owners of an oil and gas leasehold estate covering the southeast quarter of section twenty in said township and range, made a location in the southeast quarter thereof and completed a well on January 8, 1934, said well having been drilled to a depth of 5,171 feet, directly west of Hay No. 1 location, and known as Stanolind No. 1.

The defendants, Stanolind, Amerada and Ohio, being the owners of an oil and gas leasehold estate covering the southeast quarter of section twenty in said township and range, made a location in the center of the northeast quarter thereof, began drilling thereon on February 4, 1934 and finished drilling as a completed well on April 10, 1934, which well produced during the first twelve hours 275 barrels of oil, was drilled to a depth of 5,171 feet, and is known as Stanolind No. 2, which location is one location directly west of the northwest forty acres of the lease in question.

The plaintiffs further allege that, by reason of the termination of said fixed period in said leasehold estate, the beginning of said indefinite period for the holding of said leasehold estate and the implied covenant for diligent operation after oil was found in paying quantities as hereinbefore set forth, it was the duty of the defendant Shell Petroleum Corporation owning said leasehold estate in good faith to perform said implied covenant for reasonable diligence in the development of said leasehold estate.

That the defendant Shell Petroleum Corporation from and after the 10th of November, 1933, has totally failed, neglected and refused to perform the covenants for development and has failed, neglected and refused to drill more wells on said leasehold estate, although the well theretofore drilled on said leasehold,' as aforesaid, was a paying producer of oil, and the plaintiffs have demanded of said lessee defendant that said implied covenant for development should be performed and that said lessee defendant has failed, neglected and refused to drill such wells, although under the circumstances such development reasonably would be expected of operators of ordinary prudence having regard for the interests of both lessor and lessee in view of the quantity of oil capable of being produced therefrom as indicated by prior explorations and development.

The plaintiffs further allege that the defendant Shell should have drilled at least sixteen wells on the premises of the plaintiffs in pursuance of its covenant to diligently develop the said premises of plaintiffs.

The plaintiffs further allege that defendants Shell, Stanolind, Amerada and Ohio conceived a certain scheme and device of pooling their respective interests in certain oil or gas fields by turning into the common pool their respective leases on particular tracts of land and receiving in return and exchange undivided interests in all the leases of the various groups or individuals entering into said arrangement, which was for the purpose of limiting the number of wells that would be drilled within the prospective oil and gas pool and of destroying the forces which would have produced greater development of said pool by reason of the competition of said corporations or individuals.

That the said defendant Shell failed and refused to further develop the lease of the premises belonging to the plaintiffs for the reason that said defendant and its codefendants would profit by draining the oil from the property of these plaintiffs without permitting them to receive any portion of the oil and gas therefrom.

The plaintiffs further allege that on May 15, 1936 they demanded of the Shell Petroleum Corporation that it immediately drill a well to offset the Stanolind No. 2 or that the undeveloped portion of said lease be released to these plaintiffs. Thereafter, on May 27, 1936 the said Shell Petroleum Corporation advised the plaintiffs that it was studying the situation for the purpose of making a definite recommendation to its

management. Thereafter, on June 24, 1936 the plaintiffs again wrote a letter to the Shell Petroleum Corporation to know why an answer had not been given to their former letter. No further advice having been received from the said Shell Petroleum Corporation, this action was filed in the District Court of Noble County, Oklahoma, on the 1st of April, 1937 and was thereafter removed to this court.

The plaintiffs in their petition ask for the forfeiture of said lease, for damages for failure to drill said offset well, and for drainage of the plaintiffs' lease, in the sum of $5,274.76 and for the costs of the action.

The defendants have answered, the substance of which is that they could not have drilled additional wells on the property leased from the plaintiffs, profitably or without loss to themselves and therefore they were and are under no obligation to drill additional wells.

The sole issue in this case is whether or not, under the facts and circumstances, the defendant Shell was required to drill a well at the Hay No. 2 location.

In this field, under the evidence, wells were drilled on forty acre locations and that applied to the entire field surrounding the lease in question.

Minnehoma No. 2 is a northwest diagonal location. This well was completed on the 26th of March, 1934 with an initial flow of 416 barrels for twelve hours and has produced, up to the 11th day of October, 1938, a total of 78,186 barrels.

Stanolind No. 2 is immediately south of Minnehoma No. 2 and the first location west of the proposed Hay No. 2 location. This well was completed April 10, 1934 and has produced, up to the 11th day of October, 1938, 90,984 barrels.

Stanolind No. 1, immediately south of the last described location, was completed January 8, 1934 and has produced 123,048 barrels. This well is immediately west of Hay No. 1, which was completed January 8, 1934 and has produced, up to October 11, 1938, 111,832 barrels.

These four wells are the nearest wells to the proposed location of Hay No. 2.

The testimony of R. L. Clifton of the Champlin Oil Company and Gilbert W. Richards, a geologist, witnesses for the plaintiffs, was to the effect that Hay No. 2 would produce approximately 80,000 barrels of oil, and that it would cost approximately $50,000 to drill this well.

The evidence of the plaintiffs further is that the operating expenses of that well over a four year period would be $18,000; that $2,800 would be a reasonable expense for shooting the well and $800 for additional expenses in deepening the well and for additional equipment, which would make a total expense of $71,600. 80,000 barrels of oil at $1.08 per barrel would amount to $86,400, and seven-eighths, or the working interest therein, would amount to $75,600, leaving a net income of $4,000. It is agreed that the salvage on one of these wells would be $6,250. On this basis, the operators would have a profit, over a four year period, of $9,250 from Hay No. 2.

Under the evidence of the defendant Shell Petroleum Corporation, Hay No. 1 actually cost to drill, $62,930. The operating expenses from the date of completion of the well to October, 1938 were approximately $18,000 and the cost of shooting the well was $2800 making a total cost of drilling and operating Hay No. 1, from the time of its completion up until October 11, 1938, not including other items of expense, $83,730.

Under the evidence of the plaintiffs, the estimated production from the proposed Hay No. 2, which the operator would receive from his seven-eighths, would be $75,600 and taking into consideration their cost of drilling and operation of Hay No. 1 there would be a loss to the operators on the proposed Hay No. 2 of $8,130. Giving the operators credit for the salvage of $6,250, there would be a net loss over the operating period of $1,880.

The plaintiffs' witnesses testified that a profit of $20,000 to $40,000 would be a reasonable profit. The defendants' witnesses, however, testified that to take the risk of a dry hole and of probable trouble in drilling and operating the well, an operator ought to have from $50,000 to $100,000 as an anticipated profit.

There were many wells drilled in this field at a great loss. A number of good wells were found which have yielded a reasonable profit even on the basis suggested by the plaintiffs.

The geology, as disclosed by the evidence in this case, was that the structure runs northwest and southeast and that a well drilled in the center of the proposed location would be on the east edge of the structure and approximately forty feet east of the structure on which Hay No. 1

was drilled. The question, therefore, is whether or not the defendant Shell should have been expected to drill a well if the profit which it might expect would be less than $20,000. Ordinary observation and the experience of reputable operators justify the statement that under most any circumstances drilling of an oil well is a hazardous undertaking. It is one of those enterprises in which "hope springs eternal in the human breast," and whether it is a dry hole or a producing well, the expenses of drilling must be paid.

■ It is the contention of the plaintiffs that the defendant Shell should have either drilled this well early in 1934 or have surrendered the lease to the undrilled portion thereof. The lease covered one hundred and sixty acres. The only obligation that the defendant had to drill this well in 1934, or before the expiration of the time provided in the lease after the annual rentals were paid as provided in the lease, was to prevent drainage by an offset well. The immediate offset wells are Hay No. 1 and Stanolind No. 2. But the lease imposes no obligation upon the defendants to drill a well at the proposed location unless there is a reasonable basis for believing that it will be a commercial producer, that is, that the well, over a given period, will produce a quantity of oil or gas which at the market price will yield a sum sufficient to meet all expenses of development and leave a reasonable profit for the operator.

■ In determining the cost of drilling a well, where actual facts are obtainable, the court ought not to be required to speculate. The same rule should apply to production. The evidence of the plaintiffs, as to the cost of the well and the probable production from the well, is based largely upon costs of and production from wells drilled by other companies in other parts of the field.

R. L. Clifton testified what certain Champlin wells cost and from that he inferred the cost of Hay No. 2. The testimony of Gilbert W. Richards, a geologist, who admitted that he had not drilled any wells himself, was based upon his own judgment (as to what the wells should cost), and from general information which he had acquired in connection with his duties as a geologist. However, the testimony of the auditor for Shell was that Hay No. 1 cost, for drilling, equipping and operating, $85,042; that the Minnehoma No. 2 cost $83,352.27; and that the Stano-

lind No. 2 cost $81,876.61. These facts are taken from the records of the company.

The testimony of the defendants' witnesses is that, notwithstanding that the total production from Minnehoma No. 2 was 78,186 barrels; from Stanolind No. 2 was 90,984 barrels; from Stanolind No. 1 was 123,048; and from Hay No. 1 was 111,832, all of these wells, over the period in question, produced no profit to the operating company. In other words, the production from these wells was not sufficient to pay the cost of drilling, equipping and operating. And it is admitted even by the plaintiffs' witnesses that the probable production of Hay No. 2 would be less than Stanolind No. 1 or No. 2 or Hay No. 1. Uuder these circumstances then, what was the obligation of the defendant Shell in 1936 when the plaintiffs made a written demand upon it either to drill a well or surrender the undeveloped portion of the lease?

At the time of the trial of this case, in open court, the defendant Shell tendered a release of all that portion of the leased premises of the plaintiffs except the southwest forty acres, insofar as the plaintiffs' interest therein was involved.

■ It is the contention of the plaintiffs that the defendant Shell had no right to refuse a release if it did not want to drill. Under the terms of the lease, it had the right to defer drilling until the development could be made in an ordinary and profitable manner and if the investigation as to the probable production of the proposed Hay No. 2 was proceeding with reasonable definiteness and the defendant was not satisfied that it could drill the well and secure production sufficient in amount to meet the expenses of drilling, equipping and operating the well and in addition thereto produce a reasonable profit, then it was under no obligation to do so. It could not, however, continue to hold the lease and refuse to develop the land for an indefinite period or for an unreasonable period but since the suit was filed in less than twelve months after the demand was made, in view of the new processes which were being resorted to in the field to go to deeper sands, the court is of the opinion that the defendant Shell Petroleum Corporation did not abuse a reasonable discretion in refusing a release of the premises.

■ It is, therefore, the judgment of this court that a well could not have been drilled in 1934 on the proposed Hay No. 2

location which would have produced oil in sufficient quantities to make it a paying well, as that term has been defined herein.

This is consistent with the holdings of our own state court and of the federal courts in this jurisdiction. The court deems it unnecessary to recite a long list of authorities when the attorneys agree in their briefs on the principles of law involved.

Judgment will be rendered for the defendants and an exception is allowed the plaintiffs. Findings of fact, conclusions of law and a form of decree, consistent with the foregoing opinion, may be submitted within fifteen days from this date.